# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. SCHOLES, | CASE NO. 1:08-CV-01489-AWI-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| ROD HIGMAN, et al., | (DOC. 37) |
| Defendants. | |
| _____/ | OBJECTIONS DUE WITHIN TWENTY-ONE DAYS |

**Findings And Recommendations**

## I.    Procedural History

Plaintiff Michael A. Scholes ("Plaintiff") is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff was formerly in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). This action is proceeding on Plaintiff's complaint against Defendants Rod Hickman, Robin Dezember, Ken Clark, and Perlita McGuinness. On August 30, 2010, Defendants filed a motion for summary judgment. Defs.' Mot. Summ. J., Doc. 37. On September 26, 2010, Plaintiff filed his opposition. Pl.'s Opp'n, Docs. 40 to 43. On October 5, 2010, Defendants filed their reply. Defs.' Reply, Doc. 45. The Court does not find the matter necessary for a motions hearing pursuant to Local Rule 230(g), and the matter is deemed submitted.

///

///

1

1   **II.      Summary Judgment Standard**

2          Summary judgment is appropriate when it is demonstrated that there exists no genuine

3   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

4   Fed. R. Civ. P. 56(a).[1]  Under summary judgment practice, the moving party

5          always bears the initial responsibility of informing the district court of the basis
           for its motion, and identifying those portions of "the pleadings, depositions,
6          answers to interrogatories, and admissions on file, together with the affidavits, if
           any," which it believes demonstrate the absence of a genuine issue of material
7          fact.

8   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the

9   burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

10  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

11  file.'"  *Id.* at 324.  Indeed, summary judgment should be entered, after adequate time for

12  discovery and upon motion, against a party who fails to make a showing sufficient to establish

13  the existence of an element essential to that party's case, and on which that party will bear the

14  burden of proof at trial.  *Id.* at 322. "[A] complete failure of proof concerning an essential

15  element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In

16  such a circumstance, summary judgment should be granted, "so long as whatever is before the

17  district court demonstrates that the standard for entry of summary judgment, as set forth in Rule

18  56(c), is satisfied."  *Id.* at 323.

19         If the moving party meets its initial responsibility, the burden then shifts to the opposing

20  party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

21  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

22         In attempting to establish the existence of this factual dispute, the opposing party may not

23  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

24  form of affidavits, and/or admissible discovery material, in support of its contention that the

25  dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must

26  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

27

28         [1]  The Federal Rules of Civil Procedure were updated effective December 1, 2010.

1 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty*

2 *Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.*

3 *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the

4 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

5 nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v.*

6 *Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

7      In the endeavor to establish the existence of a factual dispute, the opposing party need not

8 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

9 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

10 trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

11 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

12 *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963

13 amendments).

14      In resolving a motion for summary judgment, the court examines the pleadings,

15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477

17 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

18 court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United*

19 *States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not

20 drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

21 which an inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-

22 45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

23      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

24 show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as

25 a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

26 issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).

27 ///

28 ///

3

1  **III.     Undisputed Facts[2]**

2      Plaintiff was a state prisoner housed at the California Substance Abuse Treatment Facility

3  ("CSATF") at times material to the matters at issue.  He paroled from CSATF on April 10, 2006.

4  He has no medical training.[3]  Defendants Hickman, Dezember, Clark, and McGuinness were

5  employed by the CDCR and held the following positions at times material to the matters at issue:

6  R. Hickman was the Secretary of the CDCR; R. Dezember was the Director of Healthcare

7  Services for the CDCR; K. Clark was the Warden at CSATF; and P. McGuinness was the Chief

8  Medical Officer ("CMO") at CSATF.  Defendant Clark was responsible for the overall operation

9  of the institution, but delegated responsibility for operating the various facilities to subordinates.[4]

10  Defendant Clark rarely had any personal involvement in the operation of any particular facility,

11  and rarely had personal knowledge concerning any individual inmate in the institution.

12  Defendant Clark has no medical training or background, and was not personally informed about

13  any specific medical conditions or medical treatment for any individual inmate.  He did not make

14  medical decisions, nor instruct any subordinate as to what medical decisions to make in any

15

16

17  ────────────────

18      [2]  All facts are taken from Defendants' statement of undisputed facts and are considered undisputed, unless
otherwise noted. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(e), all disputes with the
19  movant's statement of facts must be supported with citation to evidence.  *See* L. R. 260(b) (parties opposing
Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the
20  particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied
upon in support of that denial").  Plaintiff filed a list of disputed and undisputed facts, with citations to submitted
21  documents in support.  Plaintiff's verified complaint and opposition may be treated as opposing affidavits to the
extent that they are verified and set forth admissible facts (1) within Plaintiff's personal knowledge and not based
22  merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify. *Jones v. Blanas*, 393 F.3d 918, 923
(9th Cir. 2004); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); *McElyea v. Babbitt*, 833 F.2d 196,
23  197-98 (9th Cir. 1987); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985).
       Plaintiff also submits his own statement of undisputed facts.  To the extent that these facts dispute
24  Defendants' statement of facts, they will be considered.  The Court has reviewed all of the parties' arguments, even if
the argument has not been mentioned herein.  The Court will consider those facts and evidence that are relevant to
25  resolving Defendants' motion for summary judgment.

26      [3]  Plaintiff contends that he has "beyond a lay knowledge of medicine" because he has tertiary thyroidism,
which requires self-monitoring.  This does not dispute Defendants' statement that Plaintiff has no medical training.
27  Plaintiff's objection is overruled.

28      [4]  Plaintiff contends that the terms "facilities" and "institution" are too vague.  The Court construes the
terms to refer to CSATF and its facilities.

1  specific case.[5]  Defendant Clark does not know the Plaintiff personally, has never met him, and

2  has never received any specific knowledge concerning him, or any correspondence from or about

3  him. Defendant Clark has no personal knowledge about any injury Plaintiff may have suffered

4  while in the custody of CDCR, nor does he have any knowledge about any treatment Plaintiff

5  may have received for any injury.  Defendant Clark did not send anyone to speak with Plaintiff

6  about communication between his father and state legislators, and has no recollection of ever

7  taking any action concerning Plaintiff.[6]

8       On the evening of March 16, 2006, Plaintiff jumped off the top bunk and injured his

9  knee.  The next morning, March 17, 2006, Plaintiff submitted a sick call slip claiming that "I

10 "hyper extended my right knee and I sustained some soft tissue damage.  I cannot put any

11 pressure on it, my lower leg and calf are causing my knee joint to pop from right to left.  My knee

12 is very unstable and I am in extreme pain."  Plaintiff was seen by Nurse JauRegui at 11:15 a.m.

13 The nurse noted that Plaintiff's blood pressure, pulse, respiration, and temperature were all

14 within normal limits.  Plaintiff's right knee was warm and tender with some swelling, and he was

15 unable to completely extend his leg.  Plaintiff was referred to Nurse Practitioner Mulvaney

16 for an examination and evaluation.  At approximately 12:45 p.m., Defendant McGuinness

17 contends that she saw Plaintiff.[7]  Plaintiff contends that he was treated by Nurse Practitioner

18 Mulvaney only.  Plaintiff again claimed that he heard his right knee "pop" after jumping off the

19

20     [5]  Plaintiff contends a conspiracy by all Defendants pursuant to case Nos. 3:01-CV-01351 in the Northern
21 District of California, and Case No. 2:90-CV-00520 in the Eastern District of California.  Plaintiff refers to *Plata v.
   Schwarzenegger, et al.*, and *Coleman v. Schwarzenegger, et al.*, which concerned the CDCR being placed on
22 receivership regarding medical care for inmates.  Those class action suits do not demonstrate any conspiracy by
   Defendants in this action.  Plaintiff's allegations of conspiracy are far too vague.  Plaintiff's objection is overruled.

23     [6]  Plaintiff contends that Plaintiff was only informed that Defendant Clark was angry about the
24 communication between Plaintiff's father and state legislators.  The objection is overruled, as such knowledge relies
   upon inadmissible hearsay evidence.  Fed. R. Evid. 801, 802.

25     [7]  Plaintiff contends that he never saw Defendant McGuinness in any capacity until March 29, 2006.
26 Plaintiff contends that on March 29, 2006, upon Plaintiff's return to CSATF following an x-ray, Plaintiff witnessed a
   guard give Defendant McGuinness an envelope containing Plaintiff's x-rays.  Pl.'s Decl. ¶¶ 31-33, Doc. 42.
27 Defendants contend that this not supported by any admissible evidence.  Defendants cite to page 3 of Defendants'
   exhibit D.  That citation is unclear as to who provided the treatment.  However, Plaintiff's own declaration is
28 sufficient to dispute Defendants' statement of facts.  The statement of facts will thus be modified to reflect the
   parties' various contentions.

1  second level bunk.  Plaintiff claimed that he had been "self-medicating" with Motrin and Tylenol

2  since the previous night.  Defendant McGuinness contends that she prescribed Naproxyn 250

3  mg.[8]  Defendant McGuinness contends that she also ordered crutches and an x-ray of Plaintiff's

4  right knee.  On March 18, 2006, Plaintiff was designated as a "medical lay in."[9]  Plaintiff was

5  again seen on March 22, 2006.  Plaintiff complained that he was unable to use the crutches

6  because of a prior surgery on his right shoulder.  Defendants contend that Plaintiff told the doctor

7  that he wanted his knee fixed before he was released to parole on April 10, 2006.[10]  Plaintiff

8  contends that he was seen by a medical technical assistant, not a doctor.  Defendants contend that

9  the doctor noted that Plaintiff presented in a wheelchair with distressed affect.  An oxygen

10  saturation monitor was placed on Plaintiff to record any increase in his pulse rate.   Plaintiff's

11  pulse rate increased from 71 to 99 when he extended his right leg as far as he could.  Defendants

12  contend that the doctor ordered a continuation of the medications, but authorized the use of a

13  wheelchair instead of crutches.

14       On March 25, 2006, Plaintiff was moved to cell 151, a lower tier cell, and assigned to a

15  lower bunk.  Defendants contend that an order was issued for an emergent x-ray of Plaintiff's

16  right knee, to be completed at California State Prison – Corcoran ("CSP-Corcoran").[11]  CSATF

17  did not have the ability to complete the x-ray at that institution.  Plaintiff was transported to

18  CSP-Corcoran on March 29, 2006, and returned to CSATF the same day.

19

20  [8]  Plaintiff contends that Naproxyn is not a pain relief medication.  Plaintiff is not qualified to make an
opinion requiring expert training.  Fed. R. Evid. 702.  The Court notes that Defendants' submitted evidence indicates
21  only that Naproxyn was prescribed, not what Naproxyn treats.  Thus, Defendants' statement of facts is modified
accordingly.

22
[9]  Plaintiff contends that there is no evidentiary support to indicate that he received meals while on medical
23  lay-in.  After review of Defendants' supporting document, the Court cannot determine whether Plaintiff actually
received his meals in his cell while on medical lay-in.  Thus, the statement of facts is modified.

24  [10]  Plaintiff contends that he was not seen by a doctor, but by a medical technical assistant.  Defendants cite
25  to page 5 of Defendants' exhibit D.  Having reviewed exhibit D, the Court cannot find that Plaintiff was actually seen
by a doctor on March 22, 2006.  There is no signature to indicate who saw Plaintiff that day.  Accordingly, the
26  statement of facts has been modified accordingly to reflect that it is Defendants' contention only.

27  [11]  Plaintiff contends that there was no such order issued.  Defendants cite to page 6 of Defendants' exhibit
D, which indicates a Request for Authorization of Temporary Removal for Medical Treatment.  The document is
28  unsigned.  The Court will modify the statement of facts to reflect that it is Defendants' contention such an order was
issued.  Whether or not the order was authorized properly is not a material disputed fact in this action.

1   　　　The x-ray was sent to Kern Radiology Medical Group, and interpreted by the radiologist,

2   Dr. Jeffrey Child.  Dr. Child's reading of the x-ray found "no evidence of fracture or other bony

3   abnormality. No arthritic changes are seen. No evidence of joint effusion or radiopaque loose

4   body is seen.  Impression: Normal Examination."[12]  The report was dictated on April 7, 2006,

5   and transcribed on April 10, 2006.

6   　　　Plaintiff was released on parole on April 10, 2006.  On April 28, 2006, approximately

7   two and a half weeks after being released from prison, Plaintiff sought medical attention for right

8   knee pain.  Plaintiff was seen in the U. C. Davis Orthopedic Clinic on April 28, 2006.  He arrived

9   on crutches. The doctor noted slight swelling of the right knee.  Plaintiff had tenderness to

10  palpation over the patella, as well as the medial and lateral aspects of the joint line.  X-rays were

11  taken, including an AP and lateral of Plaintiff's right knee.  The x-rays revealed a Schatzker-1

12  tibial plateau fracture with no obvious split.  The doctor believed that Plaintiff might also have a

13  medial fracture of the patella, but no such fracture was evident from the x-ray.

14  　　　The Plan set forth by the doctor was: "The patient is five to six weeks out from a

15  depressed, lateral, plateau fracture, which has undoubtedly gone on to heal to some extent. We

16  will admit him to the hospital for CT scanning of that plateau fracture as it is displaced enough to

17  warrant surgery. He will require a buttress plate on the lateral side and likely bone graft. This

18  has been described and explained to him. He has also been informed that the delay in his

19  presentation may have some adverse affects on his outcome. Ideally, this is an injury treated

20  in the first ten days post injury, and he is significantly late on that."  Plaintiff had surgery on his

21  right knee on April 29, 2006.[13]  On May 15, 2006, Plaintiff returned to the clinic for a follow-up

22  appointment.  Plaintiff was doing well overall, but he needed Percocet for pain, and asked for

23  something stronger.  On examination of his knee, the incision was well-healed and the range of

24

---

25  　　　[12]  Plaintiff contends that Dr. Ferguson reviewed separate x-rays of Plaintiff's right knee on April 28, 2006,

26  and found a fracture.  Plaintiff contends that there is an inference that Dr. Childs viewed different x-rays.  Plaintiff's
    objection is overruled.  It is undisputed that Dr. Ferguson and Dr. Childs viewed different x-rays.  However, there is

27  no evidence that Dr. Childs and Dr. Ferguson did not both view x-rays of Plaintiff's right knee.

28  　　　[13]  Plaintiff contends that he received a second surgery according to the plan of treatment on June 29, 2007.
    The Court notes this, but finds this fact is immaterial to the resolution of this motion.

1  motion of his knee was approximately 15 to 100 degrees.  X-rays revealed that the hardware in

2  Plaintiff's knee was in stable condition.  The Assessment and Plan were: "Status post ORIF of

3  lateral plateau fracture 2 weeks ago.  Overall, patient doing well.  Range of motion is good.  We

4  have encouraged him to work on obtaining full extension.  He is in an unlocked Bledsoe knee

5  brace which we will continue.  Continue non-weightbearing for another 8 weeks for a total of 10

6  weeks non-weightbearing.  The patient can stop his anticoagulation as he is spending more time

7  out of bed then in bed at this point.  I have given him a refill of pain medication, 90 Percocet and

8  90 ibuprofen.  The patient should transition to ibuprofen if possible.  At his next refill, I would

9  consider Norco rather than Percocet.  Also, have the patient visit with a today to see if there are

10  any other resources available to him and his child to see whether he qualifies for any short-term

11  disability. He will be unable to work for the next 2 to 3 months.  I will see the patient back in one

12  month for repeat AP lateral x-rays of his knee."

13      On his next follow-up visit to the clinic, Plaintiff was able to "touchdown weightbearing"

14  with his leg, had full range of motion, and he had very little pain associated with the lateral part

15  of the plateau.  The Plan was to have Plaintiff go completely weightbearing, and a follow-up in

16  four weeks.  If necessary, x-rays and an MRI would be obtained to determine whether Plaintiff

17  had a meniscal tear.  Plaintiff was seen in the Orthopaedic Sports clinic in November 2006, and a

18  CT anthrogram showed medial and lateral meniscal tears, but the doctor did not relate these tears

19  to the initial knee injury.[14]

20      Plaintiff was seen for another follow-up appointment on January 9, 2007. According to

21  the medical history, Plaintiff had last been seen in September 2006, scheduled for a follow-up

22  appointment in November but had not been seen, and missed another appointment because he

23  fell off a horse on December 6, 2006, causing a fracture of several thoracic vertebra.  During this

24  follow-up appointment Plaintiff had nearly full range of motion of the knee, just 5 degrees short

25  of full extension.  Plaintiff was able to flex his knee to about 130 degrees without pain.  He had

26  no knee effusion.

27

28
_____
[14]  Plaintiff contends that other reports do relate Plaintiff's meniscal tears to the initial knee injury.  The
Court notes this, but finds that it is immaterial for purposes of resolving this motion.

1  **IV.    Analysis**

2       **A.    Deliberate Indifference To A Serious Medical Need**

3       The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does

4  not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and

5  citation omitted).   A prisoner's claim of inadequate medical care does not rise to the level of an

6  Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal

7  civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate

8  indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting

9  *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).   The deliberate

10  indifference standard involves an objective and a subjective prong.  First, the alleged deprivation

11  must be, in objective terms, "sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (citing *Wilson v.*

12  *Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[]

13  an excessive risk to inmate health or safety . . . ." *Id.* at 837.

14       "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060.  "Under

15  this standard, the prison official must not only 'be aware of the facts from which the inference

16  could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

17  inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have

18  been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

19  matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175,

20  1188 (9th Cir. 2002)).

21       **B.    Defendants Dizember and Hickman**

22       Defendants contend that Plaintiff's claims against Defendants Dizember and Hickman are

23  based solely on *respondeat superior* liability, and thus fails as a cognizable Eighth Amendment

24  claim. Defs.' Mot. Summ. J. 6:16-7:2.  Defendants also contend that there is no proof of

25  conspiracy to violate Plaintiff's constitutional rights as Plaintiff makes only bare assertions

26  without citation to any evidence. *Id.* at 10:11-25.  Plaintiff contends that 1) he does not allege

27  *respondeat superior* liability; 2) Defendants Dizember and Hickman conspired to violate his

28  constitutional rights; and 3) it is Defendants' burden on summary judgment to demonstrate that

1   there is no viable conspiracy claim.  Pl.'s Mem. P. & A. 5:25-6:5.

2       The Court has re-examined Plaintiff's amended complaint, and finds that Plaintiff makes

3   only a bare allegation that Defendants conspired to violate his constitutional rights.  Pl.'s Am.

4   Compl., Doc. 6, filed May 20, 2008.  Alleging that Defendants conspired to violate Plaintiff's

5   constitutional rights is a legal conclusion, and insufficient to state a conspiracy claim.  *See*

6   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (holding that while factual allegations are

7   accepted as true in complaint, legal conclusions are not).[15]

8       Plaintiff appears to contend in his opposition that the conspiracy is based on the CDCR

9   being in receivership regarding health care for inmates.  Pl.'s Mem. P. & A., Doc. 43.  Even if the

10  Court granted Plaintiff leave to plead these additional allegations, such allegations do not

11  remotely demonstrate any conspiracy by Defendants Dizember, Hickman, Clark, and

12  McGuinness to deprive Plaintiff of his constitutional rights *in this action*.  The Court cannot find

13  that a viable conspiracy claim exists.  Conspiracy is the only theory of liability by which

14  Defendants Dizember and Hickman are in this action.  Thus, summary judgment should be

15  granted in favor of Defendants Dizember and Hickman.

16  **C.     Defendant Clark**

17      Defendants contend that there is no evidence to indicate that Defendant Clark retaliated

18  against Plaintiff for his requesting medical care.[16]  Defs.' Mot. Summ. J. 11:3-12:7.  Defendants

19  contend that Plaintiff cannot show Defendant Clark took an adverse action against him.  *Id.*

20  Plaintiff contends that he was warned by two correctional counselors that Defendant Clark was

21  angry that Plaintiff's family had contacted state legislators.  Pl.'s Mem. P. & A. 9:12-10:13.

22

23      [15]  The Court may re-visit any orders prior to final adjudication.  *See* Fed. R. Civ. P. 54(b).
        The Court notes that Plaintiff is making new allegations in his opposition to Defendants' motion for
24  summary judgment.  Plaintiff is alleging a conspiracy to intimidate inmates by denying them medical care because of
    the pending class action in *Plata*.  Plaintiff's new allegations will not be considered.  Plaintiff had the opportunity to
25  amend his pleadings pursuant to the Court's August 6, 2009 Discovery and Scheduling Order.  Doc. 31.  The
    deadline to amend pleadings was February 6, 2010.  No new pleadings will be accepted.
26

27      [16]  In the prison context, a viable claim for "First Amendment retaliation entails five basic elements: (1) An
    assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected
    conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did
28  not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

1    Defendants have sufficiently demonstrated that there is no triable issue of material fact as

2  to Plaintiff's retaliation claim against Defendant Clark.  Plaintiff's only support for his position is

3  his declaration that two correctional counselors warned Plaintiff of Defendant Clark's anger,

4  which is inadmissible hearsay evidence.  *See* Fed. R. Evid. 801-803.  Additionally, even if the

5  Court considered Plaintiff's supporting evidence, it does not demonstrate that Defendant Clark

6  took any adverse action against Plaintiff.  As seen in the undisputed statement of facts, Defendant

7  Clark was not involved in treating Plaintiff for his injury.  Even construing all the facts in the

8  light most favorable to the non-moving party, the Court cannot find that Defendant Clark took

9  any adverse action against Plaintiff.  Thus, summary judgment should be granted in favor of

10  Defendant Clark and against Plaintiff.

11    **D.    Defendant McGuinness**

12    Defendants contend that Plaintiff received adequate medical attention while he was

13  incarcerated.  Defs.' Mot. Summ. J. 7:5-11, 9:4-10:8.  Defendants contend that he received pain

14  medication, an x-ray of his right knee, meals in his cell, crutches, and a wheelchair to help him

15  move around.  *Id.*  Defendants further contend that Plaintiff also received a lower tier/lower bunk

16  assignment to accommodate his injury.  *Id.*  Though Plaintiff later received surgery regarding his

17  knee injury, Defendants contend that Plaintiff did not suffer further injury as a result of any delay

18  in receiving surgery.  *Id.*

19    Plaintiff contends that Dr. Childs, who examined the March 29, 2006 x-ray of Plaintiff's

20  right knee on April 7, 2006, failed to find a fracture.  Plaintiff contends that Dr. Ferguson of the

21  UC Davis Medical Department examined x-rays taken on April 28, 2006 and found a fracture.

22  Plaintiff contends that the delay between Plaintiff's injury and subsequent surgery is deliberate

23  indifference.

24    As previously stated, summary judgment should be granted in favor of Defendants

25  Dizember, Hickman, and Clark.  Thus, the only remaining claim is against Defendant

26  McGuinness for violation of the Eighth Amendment.  The Court will thus construe the facts in

27  the light most favorable to Plaintiff as the non-moving party and believe Plaintiff's admissible

28  evidence.  *Anderson*, 477 U.S. at 255.  Pursuant to Plaintiff's submitted evidence in opposition,

11

1 | Defendant McGuinness received an envelope containing Plaintiff's x-rays on March 29, 2006.

2 | Pl.'s Decl. ¶¶ 31-33, Doc. 42.  That is the extent of Defendant McGuinness's involvement in

3 | Plaintiff's medical care.  *Id.*

4 |       Based on these facts, there is no triable issue of material fact as to Defendant

5 | McGuinness.  There is no evidence to indicate that Defendant McGuinness knew of and

6 | disregarded an excessive risk to Plaintiff's health.  *See Farmer*, 511 U.S. at 834, 837.  Defendant

7 | McGuinness received an envelope containing Plaintiff's x-rays.  Defendant McGuinness did not

8 | directly prescribe any treatment for Plaintiff.  Defendant McGuinness did not issue a report

9 | regarding the results of Plaintiff's x-ray.  Thus, there is an issue of whether Defendant

10 | McGuinness is liable under § 1983 for Plaintiff's treatment, as there appears to be no evidence

11 | that Defendant McGuinness caused any constitutional deprivation.  *See Johnson v. Duffy*, 588

12 | F.2d 740, 743-44 (9th Cir. 1978).

13 |       Plaintiff contends that he should have received treatment sooner.  However, there is no

14 | evidence to indicate that Defendant McGuinness knew that Plaintiff had suffered a fracture.  The

15 | x-ray report submitted by Dr. Childs did not indicate any such injury.  Even construing the facts

16 | in the light most favorable to Plaintiff, there is no evidence to support Plaintiff's Eighth

17 | Amendment claim against Defendant McGuinness.  Summary judgment should be entered in

18 | favor of Defendant McGuinness and against Plaintiff.

19 | **E.**      **Qualified Immunity**

20 |       Defendants also contend that they are entitled to qualified immunity.  As the Court

21 | recommends that summary judgment should be granted as to all Defendants, the Court does not

22 | reach Defendants' qualified immunity argument.

23 | **V.**    **Conclusion and Recommendation**

24 |       Based on the foregoing, it is HEREBY RECOMMENDED that:

25 |     1.      Defendants' motion for summary judgment, filed August 30, 2010, should be

26 |          GRANTED in full;

27 |     2.      Judgment should be entered in favor of all Defendants and against Plaintiff; and

28 |     3.      The Clerk of the Court be directed to close this action.

1    These Findings and Recommendations are submitted to the United States District Judge

2  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one**

3  **(21) days** after being served with these Findings and Recommendations, the parties may file

4  written objections with the court.  Such a document should be captioned "Objections to

5  Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

6  objections within the specified time may waive the right to appeal the District Court's order.

7  *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

8

9     IT IS SO ORDERED.

10     **Dated:    February 23, 2011**                        **/s/ Dennis L. Beck**
                                                         UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28